IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DERRICK ECHOLS,** )
)
      Plaintiff, )
)
v. ) Civil No. **06-191 - DRH**
)
**WARDEN UCHTMAN and** )
**MAJOR RAMOS,** )
)
      Defendants. )

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Plaintiff Derrick Echols is an inmate in the custody of the Illinois Department of Corrections. He brings suit under 42 U.S.C. §1983 for violation of his constitutional rights while he was incarcerated at Menard Correctional Center.

On preliminary review, the court construed the complaint as stating a claim for violation of plaintiff's First Amendment rights. Plaintiff alleges that he is a member of the Rastafarian faith, and that he wore dread locks as part of his religious practice. He claims that, upon to his transfer to Menard, he was informed by defendants that he would have to cut his hair pursuant to Menard's grooming policy. He refused to cut his hair for religious reasons. On March 24, 2005, his hair was forcibly cut. **See, Doc. 10**.

Now before the court is Defendants' Motion for Summary Judgment, which is supported by an affidavit. **(Doc. 16)**.

Defendants served upon the *pro se* plaintiff the notice required by ***Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)**. **(Doc. 18)**. Plaintiff filed a response in the form of an affidavit at **Doc. 20.**

Defendants argue that the complaint should be dismissed because plaintiff has failed to

1

exhaust administrative remedies. In his response to the motion, plaintiff explains in detail his attempts to exhaust. He states that he wrote a grievance on April 4, 2005, and placed it in the institutional mail addressed to his designated counselor. He did not receive a response. On June 10, 2005, he wrote another grievance, and again placed it in the institutional mail, addressed to his designated counselor. He did not receive a response. When he later questioned the counselor, she denied having received them. He then filed a third grievance, dated August 11, 2005. That grievance was denied as untimely. The August, 2005, grievance states that plaintiff filed two earlier grievances but did not receive a response. Copies of the August, 2005, grievance and the denial of same are attached to plaintiff's response. **See, Doc. 20 and exhibits attached thereto.** This information was also stated in plaintiff's petition, **Doc. 1, pp. 3, 5.**

No party has indicated that additional discovery regarding the exhaustion issue is necessary. Based on the evidence adduced at the hearing, the court concludes that no further discovery on this issue is needed. The issue is ripe for determination at this stage.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).**

In responding to a summary judgment motion, the non-moving party may not simply

reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," **Anderson, 477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," **Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." **Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.**

The court may not make credibility determinations on a motion for summary judgment. **Morfin v. City of East Chicago, 349 F.3d 989, 999 (7th Cir. 2003).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. **Duncan v.Duckworth, 644 F.2d 653, 655 (7th Cir.1981).**

### The Exhaustion Requirement

Plaintiff's claims are subject to the exhaustion requirement set forth in **42 U.S.C. § 1997e(a)** as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

**Perez v. Wisconsin Department of Corrections, 182 F.3d 532 (7th Cir.1999)** explained that exhaustion of administrative remedies pursuant to 42 U.S.C. § 1997e(a), while not jurisdictional *per se*, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. Exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. **See 42 U.S.C. § 1997e(a); and *Perez*, 182 F.3d at 535-536.** The Supreme Court has held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve

3

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." ***Porter v. Nussle*, 122 S.Ct. 983, 992 (2002)**.

Exhaustion must occur *before* suit is filed; plaintiff cannot file suit and then exhaust his administrative remedies while suit is pending. ***Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).** Exhaustion requires that a prisoner "properly take each step within the administrative process." ***Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)**.

The IDOC grievance system is set forth in **20 Ill. Administrative Code §504.800 *et seq*.** In summary, these regulations provide that the inmate first submits his grievance to a grievance officer, who is to make his report in writing to the Chief Administrative Office (*i.e.*, the warden). Section 504.810 requires that the grievance be submitted "within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." The warden responds in writing of his decision. If the warden denies the grievance, the inmate has 30 days in which to file an appeal to the Administrative Review Board (ARB). Where, as in Illinois, the administrative system provides for an administrative appeal of the warden's decision, exhaustion requires that the prisoner file the appeal and give the appeal board an opportunity to decide the appeal. ***Pozo*, 286 F.3d at 1024.**

In ***Pavey v. Conley*, 2008 WL 4191353(7th Cir. September 12, 2008) (amending previous decision at 528 F.3d 494 (7th Cir. 2008)**, the Seventh Circuit held that, where exhaustion is contested, the court must follow a three step process:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial

4

discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies

*Pavey*, **2008 WL 4191353 at \*2.**

### Evidentiary Hearing

On August 21, 2008, the court held an evidentiary hearing pursuant to *Pavey, supra*. See, Transcript at **Doc. 34.**

Defendants presented the testimony of two witnesses. Vickie Howie is employed as a correctional counselor at Menard Correctional Center. She testified that part of her duties involve responding to inmate grievances. General population inmates can put grievances into the mailbox which is located in each cellhouse. Segregation inmates give their grievances to staff to put into the mailbox. **Doc. 34, pp. 6-7.** The mailbox is marked "Clinical Services and Record Office." **Doc. 34, p. 15.**

Ms. Howie was plaintiff's counselor from March 25 through May 9, 2005. At that time, he was housed in general population in the West Cellhouse. **Doc. 34, p. 14.** She testified that she did not receive a grievance from plaintiff about his dreadlocks being cut. **Doc. 34, p. 12.**

In 2005, Ms. Howie had approximately 250 inmates assigned to her. When she received a grievance, she would mark on it the date of receipt, then answer it and note in the Cumulative Counseling Summary for that inmate that she had answered the grievance. There is no master log maintained of grievances received. She did not keep copies of her responses to grievances, or note in the inmate's file that a grievance had been received. **Doc. 34, pp. 15-18.**

Defendant's Exhibit 2 is the Cumulative Counseling Summary for plaintiff. The note for May 3, 2005, indicates that she spoke to plaintiff on that date and that they "discussed grievances." She does not recall what grievances they discussed. **Doc. 34, pp. 18-19.**

Ms. Owens became plaintiff's counselor on May 9, 2005. On June 2, 2005, Ms. Somers

became his counselor. On June 19, 2005, Mr. Schwartz was assigned as plaintiff's counselor. **Doc. 34, pp. 19-20.** On July 11, 2005, Mr. Schwartz noted in the Cumulative Counseling Summary that plaintiff "[s]poke of submitting nine grievances while he was in seg and never has heard anything on them." **Doc. 34, p. 21.**

On cross examination by plaintiff, Ms. Howie testified that inmates can transmit grievances to counselors in other ways in addition to the mailbox. Inmates can hand deliver grievances when the counselor makes a regular gallery tour. Also, inmates can put grievances in the outgoing mail, labeled as "institutional mail." She also testified that inmates in both segregation and general population put grievances in their cell door or bars, and an officer picks them up and puts them in the mail. **Doc. 34, pp. 24-26.**

Defendants' second witness was Jackie Miller, who is a chairperson of the Administrative Review Board. **Doc. 34, p. 35.** She briefly descried the IDOC grievance procedure, and stated that the role of the ARB is to "complete the final review" of inmate grievances. **Doc. 34, p. 36.** She then testified that the ARB file on plaintiff did not contain a grievance regarding his dreadlocks being cut. The file did contain a return of grievance form which stated that a grievance had been sent to the ARB "beyond the time frame." **Doc. 34, pp. 36-38.** She concluded that, based on her review of plaintiff's file, he did not properly exhaust a grievance regarding his dreadlocks. **Doc. 34, p. 39.**

Defendants offered their Exhibits 1, 2 and 3 into evidence. They were admitted without objection.

Plaintiff testified that he first filed a grievance about his dreadlocks on April 4, 2005. **Doc. 34, p.44.** He folded the grievance and put it inside a blank piece of paper, folded and taped together to form a makeshift envelope, and addressed it to West Cell House Gallery Counselor. He then placed it in his cell door, to be picked up by a correctional officer with the outgoing mail. An officer picks up outgoing mail on the 11:00 p.m. to 7:00 a.m. shift. **Doc. 34, pp. 45-**

6

**47.**

Echols testified that he never put his grievances in the box that Ms. Howie testified about. Rather, he would place his grievances (and other mail such as sick call slips) in his cell door, which he called "the designated place when you are locked in your cell to place your outgoing mail." **Doc. 34, p. 46.** According to his testimony, "So what I would usually do any time I filed a grievance, I placed my grievances with my outgoing mail, and most of the time those grievances would reach the counselors. Sometimes it been [sic] – has been times where the counselor would say I didn't receive any grievance concerning such and such issue, so I would write another grievance." **Doc. 34, p. 47.**

Echols testified that he spoke with a counselor sometime between April 4 and June 10, 2005, and the counselor told him that he did not receive a grievance. Therefore, Echols filed a second grievance about his dreadlocks on June 10, 2005. At that time, he was housed in segregation in the North 2 cell house. He again transmitted the grievance by placing it in the bars of his cell door. **Doc. 34, p. 49-51.** When he did not receive a response to that grievance either, he filed a third grievance on August 11, 2005. The third grievance was denied as untimely. **Doc. 34, p. 52.**

Failure to exhaust is an affirmative defense on which defendants have the burden of proof. *Westefer v. Snyder*, **422 F.3d 570, 577 (7th Cir. 2005)**. Defendants' motion should be denied because they have wholly failed to negate plaintiff's position, which is that his grievances should be deemed exhausted because prison employees failed to process his properly submitted grievances.

This case is similar to ***Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006)**. There, the inmate put his grievance in the chuckhole for a guard to pick up and mail to the ARB, which was the correct procedure. The envelope was picked up by a guard, but it never made it to the ARB. The Seventh Circuit held that, where the inmate followed the correct procedures to submit his

7

grievance, but it was not processed due to mistakes on the part of prison employees, the affirmative defense of failure to exhaust fails.  **Dole**, 438 F.3d at 811.  See also, **Lewis v. Washington**, 300 F.3d 829, 833 (7th Cir. 2002). ["We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'"]

There really is no dispute as to the material facts here.  Defendants' evidence wholly fails to counter plaintiff's testimony that he placed a timely grievance in the bars of his cell on April 4, 2005.  Ms. Howie, one of defendants' witnesses, confirmed that it was not unusual for inmates to submit grievances in that manner.  Further, Ms. Howie noted in the Cumulative Counseling Summary that she "discussed grievances" with plaintiff on May 3, 2005, which lends some support to plaintiff's version of the events.  **See,   Doc. 34, pp. 18-19.**  In terms of the procedure outlined in Pavey, supra, this case falls into category (b), that is, "although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround)."  **Pavey, 2008 WL 4191353 at *2**.  Here, plaintiff's third grievance was denied as untimely.  Therefore, it would serve no purpose to give him "another chance to exhaust."  The motion for summary judgment should be denied, and the case should proceed to discovery.

## Recommendation

This Court recommends that Defendants' Motion for Summary Judgment **(Doc. 16)** be **DENIED.**  If this recommendation is accepted, the court should enter a new scheduling order that will allow the completion of discovery and the filing of substantive dispositive motions.

Objections to this Report and Recommendation must be filed on or before **November 3, 2008.**

8

**Submitted: October 15, 2008.**

  s/ Clifford J. Proud
CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE